# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MEMORY INTEGRITY, LLC**, | Case No. 3:15-cv-00262-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **INTEL CORPORATION**, | |
| Defendant. | |

John Mansfield, MansfieldLaw, 121 SW Morrison Avenue, Suite 400, Portland, OR 97204; Bryan Atkinson, Farney Daniels PC, 800 S Austin Avenue, Suite 200, Georgetown, TX 78626; Jonathan Baker, Michael Saunders, and Gurtej Singh, Farney Daniels PC, 411 Borel Avenue, Suite 350, San Mateo, CA 94402. Of Attorneys for Plaintiff.

Renée E. Rothauge, Markowitz Herbold PC, 1211 SW Fifth Avenue, Suite 3000, Portland, OR 97204; Michael J. Summersgill, Jordan L. Hirsch, and Sean K. Thompson, Wilmer Hale LLP, 60 State Street, Boston, MA 02109; Grant K. Rowan, Wilmer Hale LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006; Arthur W. Coviello, Wilmer Hale LLP, 950 Page Mill Road, Palo Alto, CA 94304. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Memory Integrity, LLC ("Memory Integrity" or "MI") brings this action for the infringement of five of its patents: U.S. Patent Nos. 7,296,121 (the "'121 patent"); 7,107,409 (the "'409 patent"); 7,103,636 (the "'636 patent"); 8,572,206 (the "'206 patent"); and 8,898,254 (the "'254 patent"). Broadly, the patents in suit cover algorithms to efficiently maintain cache

coherence[1] in certain types of multiprocessor systems, as well as systems that implement those algorithms.

MI alleges that Defendant Intel Corporation ("Intel") infringes each patent directly, contributorily, and by inducement. Intel moves for partial judgment on the pleadings against Memory Integrity's claims for induced and contributory infringement, arguing that Memory Integrity has not alleged sufficient facts to support its claims. For the reasons below, Intel's motion is granted in part and denied in part.

## STANDARDS

A motion for judgment on the pleadings may be granted only when the pleading states no cognizable legal theory or does not contain factual allegations sufficient to support a claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).[2] In evaluating the sufficiency of a pleading's factual allegations, the court must draw all reasonable inferences in favor of the non-moving party and accept all well-pleaded material facts as true. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). That presumption of truth, however, does not extend to legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-

---

[1] A computer processor typically includes at least one small, local memory area called a *cache*. Because the cache can be accessed more efficiently than main memory, the processor uses it to store a copy of the data upon which it is currently operating. After operations are concluded, the data in the cache is copied back to main memory. In a multiprocessor system, however, if two processors are operating upon the same underlying data, their cached copies can become inconsistent with each other. Multiprocessor systems therefore incorporate *cache coherence* algorithms to prevent this from occurring. *See Computer Cache Coherency Corp. v. Via Techs., Inc.*, 2008 WL 4369770, at *2 (N.D. Cal. Sept. 23, 2008).

[2] A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim, and both are therefore evaluated according to the same standards. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

79 (2009). The plaintiff "may not simply recite the elements of a cause of action, but must [provide] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Furthermore, the underlying factual allegations must "*plausibly* suggest an entitlement to relief." *Baca*, 652 F.3d at 1216 (emphasis added). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## DISCUSSION

Both contributory infringement and induced infringement require scienter on the part of the defendant. This scienter standard is demanding because the law is "reluctan[t] to find liability when a defendant merely sells a commercial product suitable for some lawful use." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)). At the pleading stage, the patentee must provide factual allegations that "allow[] the court to draw the reasonable inference that the defendant" had the requisite scienter. *See Iqbal*, 556 U.S. at 663.

Accordingly, Intel argues that MI's allegations of scienter are conclusory and without factual support. With respect to contributory infringement, Intel also argues that MI's allegation that the accused products have no substantial non-infringing uses is conclusory. The Court addresses each theory of secondary liability in turn.

## A.  Induced Infringement

The patent laws provide that "whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[A]ctive" inducement has three elements: *knowledge* of the patent; *knowledge* that the induced acts will infringe; and "*intent* to 'bring about the

desired result,' which is infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1925, 1928 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065 (2011)) (emphasis added).

Each requirement is separate and distinct. Knowledge of the patent is straightforward: Service of the complaint provides the defendant with notice of the patent's existence, and knowledge of the patent as of the date of service is sufficient. *Black Hills Media, LLC v. Pioneer Corp.*, 2013 WL 8540141, at *2 (C.D. Cal. Sept. 24, 2013) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012)). The patentee need not, therefore, allege pre-suit knowledge of the patent. *See id.* Intel does not contest that this requirement is satisfied here.

In addition to knowledge of the patent, the patentee must allege that the defendant knew that the acts it was inducing would infringe the patent. *See Commil*, 135 S. Ct. at 1928. The latter may not merely be inferred from the former: The defendant may be aware of the patent, but "if [he] reads the patent's claims differently from the plaintiff, and that reading is reasonable," then he lacks the scienter required for inducement liability. *Id.* Both knowledge requirements may be met by an allegation of willful blindness. *Global-Tech*, 131 S. Ct. at 2069.

The final element, specific intent to encourage infringement, "can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Thus, that a product may be used in an infringing manner is not sufficient to establish intent. *Id.* at 1328-29. Nor is actual knowledge that some users of the product may be infringing the patent. *Id.* at 1329. On the other hand, instructions that "teach an infringing use" of the product may be sufficient to infer

"an affirmative intent to infringe the patent." *See id.* n.2. What the patentee must allege is "culpable conduct, directed to encouraging another's infringement." *DSU*, 471 F.3d at 1306.

Here, Intel challenges the sufficiency of MI's allegations regarding specific intent. MI alleges that Intel "actively aid[ed] and abett[ed] others (including its direct and indirect customers)" in infringing its patents and that Intel acted "with either the specific intent to cause infringement or with willful blindness to the infringement that it is causing." First Amended Complaint (Dkt. 61, hereinafter "FAC") ¶ 21.[3] Those assertions, however, are precisely the sort of legal conclusions couched as factual allegations that are insufficient to sustain a claim under *Iqbal*, 556 U.S. at 678-79. MI also provides an example of how Intel's products can be used in an infringing manner. FAC ¶ 21. At most, however, that establishes that Intel's products permit an infringing use, not that Intel's conduct is in any way culpable. *Cf. DSU*, 471 F.3d at 1306.

In addition, MI alleges that Intel "provid[ed] instructions and technical support regarding use of the [accused products], where the use of the [accused products] during normal operation by Intel's customers infringes" MI's patents. FAC ¶ 21. MI does not allege, however, that Intel's instructions and support "teach an infringing use" of its products. *Cf. Vita-Mix*, 581 F.3d at 1328. Nor does MI allege that Intel "advertises or promotes its product for use in an infringing manner." *Cf. Johnstech Int'l Corp. v. JF Tech. Berhad*, 2015 WL 2062223, at *2 (N.D. Cal. May 1, 2015).

Indeed, MI pleads *no* specific facts regarding the instructions and technical support provided by Intel—certainly nothing sufficient to permit the inference that Intel *specifically*

---

[3] These allegations concern the '121 patent; identical or substantially similar allegations concerning the '636, '409, '206, and '254 patents appear in paragraphs 27, 33, 39, and 45, respectively. Each paragraph can be analyzed in the same way.

PAGE 5 – OPINION AND ORDER

*intended* that its customers use its products in an infringing manner.[4] *Cf. Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at \*16 (N.D. Cal. Oct. 24, 2013) ("Plaintiff could, for example, have pled facts as to how Defendant's design or instruction were meant to induce or encourage Defendant . . . ."); *Unisone Strategic IP, Inc. v. Life Techs. Corp.*, 2013 WL 5729487, at \*3 (S.D. Cal. Oct. 22, 2013) (similar); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (observing that without "specific instructions on how to use the [infringing] features," there is no § 271(b) liability). In the absence of such factual support, the FAC does not give Intel fair notice or enable Intel to defend itself effectively. *Cf. Starr*, 652 F.3d at 1216. Intel is therefore entitled to judgment in its favor on MI's induced-infringement claims.

## B. Contributory Infringement

The patent laws also provide that one who supplies to others a "material part" of a patented invention, "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use," is liable for contributory infringement. 35 U.S.C. § 271(c). Contributory liability requires knowledge "that the [use] for which [the] component was especially designed was *both patented and infringing*." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (emphasis added). The knowledge required for

---

[4] In Part B, this Court holds that MI has sufficiently alleged that the accused products have no substantial noninfringing use. MI has cited language from the Federal Circuit that suggests that that holding necessarily implies an affirmative intent to infringe. *See Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008) ("[I]t is entirely appropriate to presume that one who sells a product containing a component that has no substantial noninfringing use in that product does so with the intent that the component will be used to infringe."). That language, however, is excerpted from a contributory-infringement analysis. It is true that the contributory-infringement framework substitutes the no-substantial-noninfringing-use element for a specific-intent-to-infringe element. Active inducement, however, *does* require specific intent. *See id.* at 1340 ("Unlike contributory infringement, induced infringement liability . . . requires . . . an affirmative intent to cause direct infringement." (quotation marks omitted)).

contributory liability is thus similar to the knowledge required for inducement liability. *See Global-Tech*, 131 S. Ct. at 2067.

Unlike induced infringement, however, contributory infringement does not have a specific-intent element. *Unisone Strategic IP, Inc. v. Life Techs. Corp.*, 2013 WL 5729487, at *4 (S.D. Cal. Oct. 22, 2013). Instead, on the theory that "[o]ne who makes and sells articles which are only adapted to be used in a patented combination will be presumed to intend the natural consequences of his acts," contributory liability requires that the accused component have no "substantial noninfringing use." *See Grokster*, 545 U.S. at 932 (quotation marks omitted). Intel accordingly argues that MI's allegations that the accused products have no substantial noninfringing use are not supported by sufficient factual allegations.

"Substantial" noninfringing uses are those that are not "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix*, 581 F.3d at 1327. Here, MI has alleged that "during normal operation," the accused products directly infringe its patents. FAC ¶ 22.[5] Moreover, MI has identified specific components—a "Cache Box" and "Core Valid bits"—that allegedly perform the infringing activities. *Id.* MI alleges that these components' "only purpose" is to execute algorithms that infringe its patents. *Id.* Identifying specific components of a product, explaining how they infringe, and alleging that they cannot be used but to infringe is sufficient to support a claim that the product has no substantial noninfringing use. MI has, therefore, supported this element of its claim with sufficient underlying factual allegations.

---

[5] These allegations concern the '121 patent; identical or substantially similar allegations concerning the '636, '409, '206, and '254 patents appear in paragraphs 28, 34, 40, and 46, respectively. Each paragraph can be analyzed in the same way.

Intel also argues that MI has not pled sufficient factual support for its allegation that Intel knew that the accused products were especially designed to infringe MI's patents. Intel does not contest, however, that it knew of the patents at least as of the date of service of the complaint.[6] For each patent, the complaint provides at least one theory on which the accused products infringe the patent. That is sufficient to infer that Intel knew that the use for which the accused products were especially designed "was both patented and infringing." *Cf. Aro*, 377 U.S. at 488. Although Intel may argue on summary judgment or at trial that it reasonably read MI's patents not to cover the accused products, *see Commil*, 135 S. Ct. at 1928, at the pleading stage, MI need not prove that its construction of its patents is the only reasonable one. Intel is therefore not entitled to judgment in its favor on MI's contributory-infringement claims.

## CONCLUSION

Intel's motion for partial judgment on the pleadings (Dkt. 85) is GRANTED with respect to MI's induced-infringement claims and DENIED with respect to MI's contributory-infringement claims. Because "the pleading could . . . possibly be cured by the allegation of other facts," the Court grants MI leave to amend its pleadings within 14 days. *Cf. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). MI's claims for induced infringement are DISMISSED without prejudice.

**IT IS SO ORDERED**.

DATED this 13th day of July, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[6] For the '254 patent, Intel was given notice in a letter from MI on January 9, 2015. FAC ¶ 44.