# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MEMORY INTEGRITY, LLC**, | Case No. 3:15-cv-00262-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **INTEL CORPORATION**, | |
| Defendant. | |

John Mansfield, MANSFIELDLAW, 121 S.W. Morrison Avenue, Suite 400, Portland, OR 97204; Bryan Atkinson, FARNEY DANIELS PC, 800 S. Austin Avenue, Suite 200, Georgetown, TX 78626; Jonathan Baker, Michael Saunders, and Gurtej Singh, FARNEY DANIELS PC, 411 Borel Avenue, Suite 350, San Mateo, CA 94402. Of Attorneys for Plaintiff.

Renée E. Rothauge, MARKOWITZ HERBOLD PC, 1211 S.W. Fifth Avenue, Suite 3000, Portland, OR 97204; Michael J. Summersgill, Jordan L. Hirsch, and Sean K. Thompson, WILMER HALE LLP, 60 State Street, Boston, MA 02109; Grant K. Rowan, WILMER HALE LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006; Arthur W. Coviello, WILMER HALE LLP, 950 Page Mill Road, Palo Alto, CA 94304. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Memory Integrity, LLC ("Memory Integrity" or "MI") brings this action,

alleging patent infringement of five patents owned by MI. The patents in suit cover algorithms

that efficiently maintain cache coherence[1] in certain types of multiprocessor systems, as well as systems that implement those algorithms. MI alleges that Defendant Intel Corporation ("Intel") manufactures microprocessors that infringe each patent.[2] The parties have conducted substantial discovery in this case but have arrived at a deadlock. Intel seeks to depose a corporate representative of MI on 33 topics under Federal Rule of Civil Procedure 30(b)(6). On 18 of these topics, MI refuses to designate and produce a corporate witness to testify. Further, Intel asserts that MI refuses fully to respond to certain requests for documents and interrogatories. MI argues that to the extent that Intel is entitled to the requested discovery, MI's responses are sufficient. Finally, Intel argues that regarding half of its accused products, MI's infringement contentions are insufficient; MI disagrees. Intel moves to compel discovery from MI. For the reasons that follow, Intel's Motion to Compel, Dkt. 95, is GRANTED IN PART AND DENIED IN PART.

## DISCUSSION

"[T]he Federal Rules of Civil Procedure promote a 'broad and liberal' policy of discovery 'for the parties to obtain the fullest possible knowledge of the issues and facts before trial.'" *In re MSTG, Inc.*, 675 F.3d 1337, 1346 (Fed. Cir. 2012) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947)). The touchstone of permissible discovery is embodied in Rule 26(b)(1), which provides, in relevant part:

---

[1] A computer processor typically includes at least one small, local memory area called a "cache." Because the cache can be accessed more efficiently than main memory, the processor uses it to store a copy of the data upon which it is currently operating. After operations are concluded, the data in the cache is copied back to main memory. In a multiprocessor system, however, if two processors are operating upon the same underlying data, their cached copies can become inconsistent with each other. Multiprocessor systems, therefore, incorporate cache coherence algorithms to prevent this from occurring. *See Computer Cache Coherency Corp. v. Via Techs., Inc.*, 2008 WL 4369770, at *2 (N.D. Cal. Sept. 23, 2008).

[2] According to Intel, MI bought the asserted patents from Sanmina Corporation in June 2013 and does not purport to "practice the patents." In other words, MI sells no products that use the patents and is what some courts refer to as a "non-practicing entity."

> Parties may obtain discovery regarding any non-privileged matter
> that is relevant to any party's claim or defense . . . . Relevant
> information need not be admissible at the trial if the discovery
> appears reasonably calculated to lead to the discovery of
> admissible evidence. All discovery is subject to the limitations
> imposed by Rule 26(b)(2)(C).

As expressed by the final sentence of Rule 26(b)(1), the right to discovery is not unlimited, and

the Court may "limit the frequency or extent of discovery" that is "unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). When the subject of discovery

relates to an issue of substantive patent law, Federal Circuit precedent governs discovery

disputes. *MSTG*, 675 F.3d at 1341.

## A.  Settlement and Licensing Negotiations with Other Parties

MI objects to Intel's Deposition Topic No. 29, regarding "all communications,

discussions, and negotiations related to" MI's "efforts to license the Asserted Patents." Dkt. 96-1

at 9 (hereinafter "Notice of Deposition"). Similarly, MI refuses to respond substantively to

Intel's Interrogatory No. 8, which seeks details on "each offer, discussion, and/or negotiation to

license, sublicense, covenant not to sue, and/or settle any claims . . . concerning each of the

Asserted Patents." Dkt. 96-2 at 8 (hereinafter "Interrogatories"). MI asserts that its only licensing

efforts have been ongoing settlement discussions with the other defendants in the original case.[3]

MI argues that pursuant to Federal Rule of Evidence 408, such discussions are not admissible;

that therefore, they are not "reasonably calculated to lead to the discovery of admissible

evidence," *see* Fed. R. Civ. P. 26(b)(1); and thus, that such discussions also are not discoverable.

Intel argues that this discovery is directly relevant both to issues of damages (*e.g.*, the value of

_____

[3] Intel was originally one of several defendants in a case that is still pending in the
District of Delaware. Intel successfully moved to transfer its dispute with MI to this District.

the patents and a reasonable royalty) and liability (*e.g.*, MI may have taken positions in such negotiations regarding the scope of its patents).

The Federal Circuit has considered this type of argument and rejected it. In *MSTG*, the Federal Circuit held that Federal Rule of Evidence 408 is no basis for a privilege protecting "settlement negotiations related to reasonable royalties and damage calculations." 675 F.3d at 1348. Accordingly, the court affirmed the district court's decision ordering production of such materials. *Id.* In so holding, the court necessarily recognized that under certain circumstances, settlement negotiations can lead to the discovery of admissible evidence. The contents of such negotiations might, for example, reveal comparable license agreements or limitations on the scope of the patents, either of which could be discoverable.[4] *See, e.g.*, *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008) ("[T]hird-party negotiations could help [the defendant] ascertain the extent of its liability to [the plaintiff] and to formulate an appropriate litigation strategy.").

MI also objects that unlike the settlement negotiations in *MSTG*, the negotiations at issue here are as yet unconsummated. That fact has no appreciable bearing on whether the contents of those negotiations may lead to the discovery of admissible evidence. Disclosure of the contents of settlement negotiations could, however, affect the result of those negotiations. Thus, MI may restrict access to such materials and testimony under the terms of the protective order entered in this case.

---

[4] Moreover, even as regards admissibility, the Federal Circuit has "not yet decided the extent to which evidence of settlement negotiations would be [excluded] under [Federal] Rule [of Evidence] 408." *Id.* at 1346 n.4. Federal Rule of Evidence 408 prohibits the admission of compromise offers and negotiations to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction, but allows the admission of such evidence "for another purpose."

**B.  Other Deposition Topics**

MI objects to several of Intel's Rule 30(b)(6) deposition topics on the grounds that they are not appropriate subjects for lay-witness testimony. These topics—identified as numbers 8, 9, 11, 12, 14, 16, 18-26, and 28—generally cover the subject matter, conception, and reduction to practice of the patents; the validity of the patents and the prior art; the basis for MI's infringement allegations; and the basis for MI's damages claims. MI argues that the appropriate avenues for discovery regarding such topics are "contention interrogatories, patent rule-type disclosures, and expert reports." Intel argues that although MI may produce expert analysis on these topics, Intel is entitled to discover any underlying *facts* in MI's possession.

**1.  Deposition of a Corporate Representative under Rule 30(b)(6)**

Rule 30 concerns depositions by oral examination. Rule 30(b)(6) provides:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and *must describe with reasonable particularity the matters for examination*. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. *The person designated must testify about information known or reasonably available to the organization*. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6) (emphasis added).

As explained by the Advisory Committee, the discovery device created by Rule 30(b)(6) was intended to assist both sides in the deposition process. Previously, officers or managing agents of a corporation who were deposed might use a technique known as "bandying," in which each witness in turn disclaims knowledge of facts that are known to other persons in the organization and thereby to the organization itself. This rule was intended to curb that practice. In addition, organizations at times were subjected to an unnecessarily large number of their

PAGE 5 – OPINION AND ORDER

officers and agents being deposed by a party who was uncertain of who in the organization has

knowledge regarding some specific matter at issue. The Advisory Committee observed that the

burden placed by this rule on a party required to produce a witness or witnesses "is not

essentially different from that of answering interrogatories under Rule 33, and is in any case

lighter than that of an examining party ignorant of who in the corporation has knowledge." Fed.

R. Civ. P. 30, Advisory Committee Notes (1970 Amendments).

"In a Rule 30(b)(6) deposition, there is no distinction between the corporate

representative and the corporation. The Rule 30(b)(6) designee does not give his personal

opinion. Rather, he presents the corporation's 'position' on the topic. The designee testifies on

behalf of the corporation and thus holds it accountable." *Sprint Commc'ns Co. L.P. v.*

*Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) (quotations marks and footnotes

omitted). Under this rule, "companies have a duty to make a conscientious, good-faith effort to

designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and

unevasively answer questions about the designated subject matter." *Id.* (quotation marks

omitted)).

For these reasons, the purpose underlying Rule 30(b)(6) would be "frustrated [if] a

corporate party produces a witness who is unable . . . or unwilling to provide the necessary

factual information on the entity's behalf." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*,

228 F.3d 275, 304 (3d Cir. 2000). Thus, the rule requires, if need be, that the responding party

"must prepare deponents by having them review prior fact witness deposition testimony as well

as documents and deposition exhibits." *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.

1996). In short, corporate parties have an obligation to present witnesses who are capable of

providing testimony on the noticed topics regardless of whether the information was in the

witness's personal knowledge, provided that the information is reasonably available to the corporation. *Covad Commc'n Co. v. Revonet, Inc.*, 267 F.R.D. 14, 25 (D.D.C. 2010); *see also Nutramax Labs., Inc. v. Twin Labs, Inc.*, 183 F.R.D. 458, 469 (D. Md. 1998) ("The testimony of [Rule 30(b)(6)] witnesses also is not limited to matters within their personal knowledge, but extends to matters known or reasonably available to the party designating the witness." (quotation marks omitted)).

Because Rule 30(b)(6) places substantial responsibilities and burdens on the responding corporate party, the rule itself expressly requires that the party requesting the deposition "must describe with reasonable particularity the matters for examination." As one court has explained, "to allow the Rule to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Sprint*, 236 F.R.D. at 528 (emphasis added); *see also Lipari v. U.S. Bancorp, N.A.*, 2008 WL 4642618, at *5 (D. Kan. Oct. 16, 2008). "Once notified as to the reasonably particularized areas of inquiry, the corporation then must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Sprint*, 236 F.R.D. at 528 (quotation marks omitted).

### 2.  Application

The Federal Rules of Civil Procedure generally allow a party to select the method or methods of discovery and the order of discovery methods used. Rule 26(c)(1)(C), however, provides that the Court may, to protect a party from undue burden, issue an order "prescribing a discovery method other than the one selected by the party seeking discovery." In patent cases, "[o]ne of the factors that courts consider when analyzing [whether to allow a Rule 30(b)(6) deposition] is whether, based on the facts of each case, contention interrogatories are a more

appropriate discovery tool than a 30(b)(6) deposition." *TV Interactive Data Corp. v. Sony Corp.*, 2012 WL 1413368, at *2 (N.D. Cal. Apr. 23, 2012). In particular, when the proposed deposition topics are complex and highly technical, or involve legal issues that require the assistance of an attorney, the interrogatory is the preferred device. *See Taylor*, 166 F.R.D. at 362 n.7 (collecting cases); *see also McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286-88 (N.D. Cal. 1991) (holding that where a Rule 30(b)(6) topic calls for testimony so granular that "no human being . . . could reliably and completely set forth [the] material," parties may be directed to seek that testimony through interrogatories), *overruled on other grounds by* 765 F. Supp. 611 (N.D. Cal. 1991).

The patents in this case are highly technical, and Intel is accused of infringing 110 separate claims. Thus, requiring MI to prepare one or more corporate representatives to testify on topics as broad as "[t]he alleged factual bases supporting . . . MI's allegations that Intel infringes the Asserted Patents" would be a substantial burden. *See* Notice of Deposition at 7. Moreover, most of the topics to which MI has objected on this basis, such as infringement and validity, interleave factual matter and legal argument. Topic No. 9, for example, requests testimony regarding "[a]ny alleged novelty or alleged benefit of the Asserted Patents over the Prior Art." *Id.* Similarly, Topic No. 16 requests testimony regarding "investigation by MI concerning . . . the validity or enforceability of the Asserted Patents." *Id.* at 8. Intel is entitled to the facts in MI's possession regarding such topics, but the most appropriate vehicle to obtain such facts appears to be interrogatories propounded under Rule 33.

Fed. R. Civ. P. 33(a)(1) provides:

> Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional

> interrogatories may be granted to the extent consistent with
> Rule 26(b)(2).

The Court notes that some, but not all, of the Rule 30(b)(6) deposition topics noticed by Intel also are reflected in the interrogatories already served by Intel. Because MI objects to producing for deposition a witness under Rule 30(b)(6) on many of these topics, if Intel requires more interrogatories fully to explore the topics to which MI has objected, it may move the Court for permission to do so after conferring with opposing counsel.

In addition, in the District of Oregon, "contention" interrogatories are generally prohibited by Local Rule 33-1(d). That rule provides:

> Prohibited Form of Interrogatories. Broad general interrogatories,
> such as those that ask an opposing party to "state all facts on which
> a claim or defense is based" or to "apply law to facts," are not
> permitted.

Because MI objects to producing for deposition a witness under Rule 30(b)(6) on many of the topics that Intel has requested and given the nature of the complex claims and defenses in this patent litigation, Intel is relieved from the prohibition of Local Rule 33-1(d). *See* Local Rule 1-4 ("In the interest of justice, a judge may suspend or modify the application of these rules in an individual case or group of cases.").

Further, Intel argues that, "[a]t a minimum, Intel is entitled to depose MI regarding its lack of knowledge on these issues." Dkt. 95, at 9. Intel also asserts that MI has only one employee, Brent Farney , whom Intel describes as a patent lawyer. Nothing prevents Intel from noticing the deposition of MI's employee Mr. Farney pursuant to Rule 30, without the need to invoke Rule 30(b)(6). If Mr. Farney confirms that MI has no other employees, then Intel should be able sufficiently to explore what MI's sole employee knows and what he does not know.

### 3.  Other Issues

MI makes other arguments and objections regarding many of these topics that should be addressed, regardless of whether they are raised in the context of a deposition or in responding to interrogatories. Accordingly, in the interests of efficiency, the Court addresses these arguments and objections in this Opinion and Order. MI argues that the topics to which it objects are premature for discovery because claim construction has not yet occurred and expert reports are not due for almost a year. That is irrelevant. Intel is entitled to learn the facts that currently are in MI's possession—not MI's expert analysis, but the underlying facts—that formed MI's basis for filing this action.

MI also argues that any discovery relating to its pre-filing investigation—including, for example, "[t]he alleged factual bases supporting . . . MI's allegations that Intel infringes the Asserted Patents"—is precluded by the work-product doctrine. That is not so. Intel is not entitled to tangible material, or its intangible equivalent, prepared by MI or its agents in anticipation of litigation, but Intel *is* entitled to discover the underlying relevant, non-privileged factual matter.[5] *See* Fed. R. Civ. P. 26(b)(3)(A); *see also Iris Corp. Berhad v. United States*, 84 Fed. Cl. 489, 493 (2008) (holding that several topics related to pre-filing investigation are discoverable).

## C.  Patent Purchase Negotiations

In Interrogatory No. 8, Intel seeks details regarding MI's negotiations to purchase the patents in suit. Dkt. 96-10 at 26-27. MI's response includes the name of the previous owner of the patents, the persons involved in the negotiations, and a general timeline of negotiations. Dkt. 96-10 at 26-27. Intel asserts that this response is insufficient and seeks substantive details

---

[5] MI objects to Deposition Topic No. 32 on this ground, but not on the ground that it is an inappropriate subject for lay testimony. Intel may therefore depose MI's corporate representative on this topic.

regarding the negotiations, such as any "assertions by MI or [the prior owner] regarding the scope or value of the patents, or any other proposed payment terms." Such information falls within the language of the interrogatory and is relevant to MI's damages or to calculating a reasonable royalty rate. *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*, 2012 WL 877125, at *3-4 (N.D. Cal. Mar. 15, 2012).

MI argues that such additional information may be contained in its email records, and further argues that it need not provide such records until after it receives an appropriate "email discovery request" under Local Rule 26-6. MI is mistaken. MI is entitled to rely on Rule 33(d), which permits the recipient of an interrogatory to answer by "specifying the records that must be reviewed" and "giving the interrogating party a reasonable opportunity to examine and audit the records." If MI chooses to do so, however, it then must make available to Intel all records, email and otherwise, responsive to Intel's interrogatory as directed by Rule 33(d). Alternately, MI may choose to examine its records itself and abstract from them a complete answer to Intel's interrogatory. In either case, however, MI must respond to Intel's interrogatory without awaiting a further request for production.

## D.  Infringement Contentions

According to Intel, its processor development takes place in two phases, each of which results in a new generation of products. Intel refers to these two phases as "Tick-Tock." In the "Tick" phase, Intel shrinks the design of the previous generation to be produced using a smaller semiconductor process. In the "Tock" phase, Intel introduces new features and redesigns its processor microarchitecture. Taking this into account, MI provided detailed infringement contentions only for "Tock" phase processors; for "Tick" phase processors, MI merely cited its infringement contentions for the preceding "Tock" phase. Intel argues that because some design changes do occur between a "Tock" phase and the following "Tick" phase, MI's infringement

contentions for "Tick" phase processors are insufficient. In the event that MI cannot immediately refine its infringement contentions for "Tick" phase processors, Intel seeks to bind MI to its prior contentions.

This case was transferred to this District from the District of Delaware on February 13, 2015. Dkt. 45. In that District, parties in patent litigation are expressly permitted to supplement their initial disclosures, including initial infringement contentions. Dkt. 101-6 at 5 & n.3. While the case was in Delaware, the parties filed a stipulated scheduling order that tracked the Delaware local rules, Dkt. 41, which this Court adopted after the case was transferred to this District. Dkt. 47. Since the transfer, the parties have continued to stipulate to a schedule modeled after the Delaware rules. Dkts. 87, 88. Accordingly, the District of Delaware patent rules apply to this case, except where this Court expressly orders otherwise. No such order has been entered regarding the finality of the initial infringement contentions, and the Court declines to do so now. MI may supplement its initial infringement contentions consistent with the patent rules of the District of Delaware and any additional orders imposed by this Court. Indeed, the Court notes that the parties must exchange their proposed constructions and supporting evidence by August 25, 2015, and must file their "Final Joint Claim Chart" by September 1, 2015. Dkts. 87, 88.

## CONCLUSION

Intel's Motion to Compel, Dkt. 95, is GRANTED IN PART AND DENIED IN PART as set forth in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of July, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge