**Renée E. Rothauge**, OSB #903712
ReneeRothauge@markowitzherbold.com
MARKOWITZ HERBOLD PC
Suite 3000, Pacwest Center
1211 SW Fifth Avenue
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax:  (503) 323-9105

**Michael J. Summersgill** (*pro hac vice*)
**Jordan L. Hirsch** (*pro hac vice*)
**Sean K. Thompson** (*pro hac vice*)
WILMERHALE LLP
60 State Street
Boston, MA  02109
(617) 526-6000

**Grant K. Rowan** (*pro hac vice*)
WILMERHALE LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

**Arthur W. Coviello** (*pro hac vice*)
WILMERHALE LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 663-6000

*Attorneys for Defendant Intel Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| **MEMORY INTEGRITY, LLC**, | Case No. 3:15-cv-00262-SI |
| Plaintiff, | **DEFENDANT INTEL CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| **INTEL CORPORATION**, | **Pursuant to Fed. R. Civ. P. 12(c)** |
| Defendant. | |

INTEL CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS;
MEMORANDUM IN SUPPORT THEREOF

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................ ii

L.R. 7-1 COMPLIANCE .................................................................................... 1

MOTION ............................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 3

    A. The Court's Dismissal Of MI's Inducement Claims ................... 3

    B. MI's Second Amended Complaint Alleges No Facts To Show That Intel Specifically Intended To Induce Infringement By Others ................... 3

       1. MI's '121 Patent Inducement Allegations ............................. 4

       2. MI's '636 Patent Inducement Allegations ............................. 5

       3. MI's '409 Patent Inducement Allegations ............................. 6

       4. MI's '206 Patent Inducement Allegations ............................. 7

       5. MI's '254 Patent Inducement Allegations ............................. 8

III.  ARGUMENT ..................................................................................... 9

    A. MI's Inducement Claims Should Be Dismissed Because MI Cannot Plead Facts To Meet The Specific Intent Requirement. ................................. 10

       1. The Intel Documents on Which MI Relies—Which Merely Describe the Operation of the Accused Products—Do Not Suggest a Specific Intent to Infringe. 11

       2. MI Fails to Offer Any Explanation as to How the Cited Intel Documents Allegedly Show a Specific Intent to Infringe. ...................... 13

       3. Intel's Continued Supply of Product Information to Its Customers Following the Filing of MI's Original Complaint Is Insufficient to Show Specific Intent. .......... 14

IV.  CONCLUSION ................................................................................. 15

CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2) ............................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................................9

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.,*
No. 11-cv-4049, 2012 WL 2343163 (N.D. Cal June 5, 2012) ...............................12

*Bascom Research LLC v. Facebook, Inc.,*
No. 12-cv-6293, 2013 WL 968210 (N.D. Cal. March 12, 2013)......................10, 14

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................9

*Commil USA, LLC v. Cisco Sys., Inc.,*
135 S. Ct. 1920 (2015).........................................................................10, 15

*DSU Med. Corp. v. JMS Co.,*
471 F.3d 1293 (Fed. Cir. 2006).....................................................................11

*Global-Tech Appliances, Inc. v. SEB S.A.,*
131 S. Ct. 2060 (2011).................................................................................10

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.,*
681 F.3d 1323 (Fed. Cir. 2012)......................................................................13

*Johnstech Int'l Corp. v. JF Tech. Berhad,*
No. 14-cv-2864, 2015 WL 2062223 (N.D. Cal. May 1, 2015)..............................10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
545 U.S. 913 (2005).............................................................................13, 14

*Microsoft Corp. v. DataTern, Inc.,*
755 F.3d 899 (Fed. Cir. 2014).......................................................................10

*Mujica v. AirScan Inc.,*
771 F.3d 580 (9th Cir. 2014) .........................................................................9

*Pragmatus AV, LLC v. Yahoo! Inc.,*
No. 11-cv-902, 2013 WL 2295344 (D. Del. May 24, 2013) ................................15

*Pragmatus Telecom, LLC v. Ford Motor Co.,*
No. 12-cv-92, 2012 WL 2700495 (D. Del. July 5, 2012).....................................10

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ...................................................................................9

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .....................................................................................9

*Straight Path IP Group, Inc. v. Vonage Holdings Corp.*,
    No. 14-cv-502, 2014 WL 3345618 (D.N.J. July 7, 2014) .............................. *passim*

*Superior Indus., LLC v. Thor Global Enters. Ltd.*,
    700 F.3d 1287 (Fed. Cir. 2012)..................................................................................9

*Tranxition, Inc. v. Novell, Inc.*,
    No. 12-cv-1404, 2013 WL 2318846 (D. Or. May 27, 2013).....................................13

*Unisone Strategic IP, Inc. v. Life Tech. Corp.*,
    No. 13-cv-1278, 2013 WL 5729487 (S.D. Cal. Oct. 22, 2013)..........................12, 15

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)...........................................................................11, 12

**Rules**

Federal Rule of Civil Procedure 12(c) ...........................................................................1

LR 7-1 ..............................................................................................................................1

LR 7-2(B)(2) ...................................................................................................................17

LR 7-2(b), 26-3(b), 54-1(c)............................................................................................17

**LR 7-1 COMPLIANCE**

Pursuant to Local Rule 7-1, the parties made a good faith effort by telephone conference to resolve this dispute and have been unable to do so.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Intel Corporation ("Intel") respectfully requests partial judgment on the pleadings dismissing Plaintiff Memory Integrity, LLC's ("MI") claims of induced infringement.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

On July 13, 2015, the Court dismissed MI's inducement allegations as not "sufficient to permit the inference that Intel *specifically intended* that its customers use its products in an infringing manner."  (Dkt. 98 ("Order") at 5-6 (emphasis in original).)  MI's revised inducement allegations—which still fail to plead proper claims of inducement—confirm that MI cannot cure these deficiencies.

***First***, MI's new complaint again contains no factual support for its allegation that Intel "specifically intended" to induce infringement.  As shown in the redline attached as Exhibit 1, MI's amended complaint merely adds long quotes from Intel technical documents that purportedly describe the operation of some of the components of the accused Intel products.  MI attempts to use these quotes to create the appearance of factual support for its inducement allegations.  But ***none*** of these documents even suggests, let alone provides facts that could establish, a specific intent to infringe.  Instead, the documents simply purport to describe features of the Intel products.  It is well settled that merely describing features of an accused product to customers—something that all product companies must do in the ordinary course of their business—is insufficient to establish a specific intent to infringe.

**Second**, MI's new complaint provides no explanation as to how the cited excerpts from Intel's technical documents supposedly show an intent to infringe. As this Court previously explained, MI must do more than merely allege that Intel advertises or supports the accused products; rather, MI must provide specific factual allegations showing **how** Intel's advertisements and support for its products "teach an infringing use" to show a specific intent to infringe. *See* Order at 5 (explaining that MI failed to allege how "Intel's instructions and support [for its products] 'teach an infringing use' of its products"). Without any such explanation in the complaint as to how the quoted Intel documents could be used to show an alleged intent to infringe, MI's new allegations amount to no more than an assertion that Intel advertises and provides support for its products. This is insufficient as a matter of law.

**Finally**, MI's allegation that Intel continued to provide documents describing the accused products after receiving MI's complaint also does not establish specific intent. As this Court has already explained, knowledge and intent are separate elements, and intent may not be inferred merely based on knowledge of the plaintiff's allegations. As a result, merely continuing to describe products in marketing and technical literature after learning of a plaintiff's complaint, without more, is insufficient to establish intent. *See* Order at 4 ("The defendant may be aware of the patent, but 'if [he] reads the patent's claims differently from the plaintiff, and that reading is reasonable,' then he lacks the scienter required for inducement liability."); *see also id.* ("The latter [specific intent requirement] may not merely be inferred from the former [knowledge requirement].").

Even after multiple attempts, MI cannot plead facts showing that Intel had a specific intent to induce infringement. Accordingly, MI's inducement claims should be dismissed with prejudice.

## II.   BACKGROUND

### A.   The Court's Dismissal Of MI's Inducement Claims

On July 13, 2015, this Court dismissed MI's inducement claims on the ground that MI failed to allege facts sufficient to support its claims.  (Order at 5-6.)  Specifically, the Court found that MI's complaint lacked factual allegations that, even if taken as true, would be sufficient to satisfy the specific intent requirement of induced infringement.  (*Id.*)

The Court found that although MI "allege[d] that Intel 'provid[ed] instructions and technical support regarding use of the [accused products],'" MI failed to allege facts that would show "that Intel's instructions and support 'teach ***an infringing use***' of its products."  (*Id.* at 5.)[1] The Court further found that MI failed to allege facts showing that Intel "advertises or promotes its product for use ***in an infringing manner***."  (*Id.*)  Accordingly, the Court found that MI had pleaded "*no* specific facts" regarding the specific intent requirement of induced infringement and "certainly nothing sufficient to permit the inference that Intel *specifically intended* that its customers use its products in an infringing manner."  (*Id.* at 5-6 (emphasis in original).)

### B.   MI's Second Amended Complaint Alleges No Facts To Show That Intel Specifically Intended To Induce Infringement By Others

On July 27, 2015, MI filed a Second Amended Complaint in response to the Court's Order dismissing its prior inducement claims.  (Dkt. 105 ("2nd Am. Complaint").)  As set forth below, for each of the five asserted patents, MI's amended inducement allegations merely add quotations from Intel product guides and marketing materials that purport to describe aspects of the Intel products that MI has accused of infringement.  While such documents may be sufficient to plead direct infringement under certain circumstances (and to be clear, Intel strongly disagrees

---

[1]  Emphasis is added unless otherwise noted.

that they show infringement in this case), there is nothing in the cited documents that makes the further showing that Intel had a specific intent to infringe.

1.    **MI's '121 Patent Inducement Allegations**

The '121 patent is directed to a "probe filtering unit" in a specific multiple-processor architecture.  (Dkt. 105-1-A ("'121 patent") at 2:52-56.)  The claimed probe filtering unit receives and then filters probes—*i.e.*, by transmitting the received probes to only certain cache memory.  (*Id.*)  The '121 patent claims also require a "point-to-point architecture," which the patent defines as an architecture in which multiple processors are "directly connected to each other through point-to-point links."  (*Id.* at 4:38-40 ("In a point-to-point architecture, a cluster of processors includes multiple processors directly connected to each other through point-to-point links.").)

As shown in the redline of MI's amended complaint attached as Exhibit 1, MI amended its inducement allegations with respect to the '121 patent to assert that Intel provides "manuals, data sheets, presentations, instructions, and other materials" that allegedly "describe, promote, and encourage use" of a feature in the Intel processors referred to as "core valid bits" that MI contends infringes the '121 patent.  (2nd Am. Complaint ¶ 22.)  MI then references several Intel documents purporting to describe the "core valid bit" functionality of the Intel processors.  (*Id.* at ¶¶ 23-25.)  MI relies, for example, on the following description from an Intel datasheet for the Intel Xeon Processor E7 V2 Product Family regarding the products' use of core valid bits:

> For any given cache line, the LLC implements core valid bits to track which local core(s) have cached the line in their MLC. Core valid bits are also used by LLC to determine which local core(s) are needed to be snooped during responding to snoop request.

(*Id.* at ¶ 23 (quoting Ex.105-6-F at 25).)  This document, as with the other documents cited by MI, merely describes certain functionality of the accused products; nothing on the face of this

document or any other document cited by MI teaches or suggests an infringing use of the product, and MI's Second Amended Complaint provides no explanation as to how the quoted text from these Intel documents supposedly shows a specific intent to infringe.  (*Id.* at ¶¶ 23-25.)

### 2.    MI's '636 Patent Inducement Allegations

The '636 patent is directed to "speculative probing" of a remote cluster of processors in a specific multiple-processor architecture.  (Dkt. 105-2-B ("'636 patent") at 2:65-3:3.)  The patent defines speculative probing as "any mechanism for sending probes to nodes associated with cache blocks before a request associated with the probes is received at a serialization point." (*See id.* at 6:21-24.)  As in the '121 patent, the '636 patent claims also require that the processors within a cluster are interconnected in a "point-to-point architecture."  (*See, e.g.*, *id.* at 20:55-58 (requiring "the first plurality of processors and the first cache coherence controller interconnected in a point-to-point architecture").)

MI's amended inducement allegations for the '636 patent assert that Intel provides "manuals, data sheets, presentations, instructions, and other materials" that allegedly "describe, promote, and encourage use of" a functionality in the Intel processors referred to as "source snooping" that MI contends infringes the '636 patent.  (2nd Am. Complaint ¶ 34.)  MI then references several Intel product documents that purport to describe the source snooping functionality of the Intel processors.  (*Id.* at ¶¶ 35-39.)  MI, for example, relies on the following portion of an Intel article that discusses Intel's "source snooping" protocol:

> Cache coherence snooping can be initiated by the caching agents that request data. This mechanism, called source snooping, is best suited to small systems that require the lowest latency to access the data in system memory…

(*Id.* at ¶ 35 (quoting Ex.105-9-I at 72).)  This document, as with the other documents cited by MI, merely describes certain functionality of the accused products; nothing on the face of this document or any other document cited by MI teaches or suggests an infringing use of the

product, and MI's Second Amended Complaint provides no explanation as to how the quoted

text from these Intel documents supposedly shows a specific intent to infringe.  (*Id.* at ¶¶ 35-39.)

### 3.    MI's '409 Patent Inducement Allegations

Like the '636 patent, the '409 patent is directed to "speculative probing," but the '409

patent claims speculatively probing a "local" cluster of processors.  (Dkt. 105-3-C ("'409

patent") at 2:48-56.)  The '409 patent uses the same definition of speculative probing as in the

'636 patent.  (*See id.* at 5:43-46.)  The '409 patent claims require that the processors within a

cluster are interconnected in a "point-to-point architecture."  (*See, e.g.*, *id.* at 18:20-27.)

MI's amended inducement allegations for the '409 patent assert that Intel provides

"manuals, data sheets, presentations, instructions, and other materials" that allegedly "describe,

promote, and encourage use of" what are referred to as "Read-for-Ownership ("RFO")

operations" in the Intel processors that MI contends infringe the '409 patent.  (2nd Am.

Complaint ¶ 48.)  MI then quotes from multiple documents purporting to describe this RFO

functionality.  (*Id.* at ¶¶ 49-53.)  MI relies, for instance, on the following portion of an Intel

product guide that discusses how the accused Intel processors perform "read-for-ownership"

operations:

> When a write to a write-combining buffer for a previously-unwritten cache line
> occurs, there will be a read-for-ownership (RFO).  If a subsequent write happens
> to another write-combining buffer, a separate RFO may be caused for that cache
> line.  Subsequent writes to the first cache line and write-combining buffer will be
> delayed until the second RFO has been serviced to guarantee properly ordered
> visibility of the writes.

(*Id.* at ¶ 50 (quoting Ex.105-14-N at Chapter 3, p.58).)  This excerpt from the product guide,

however, like the other documents cited by MI, again merely describes certain functionality of

the accused products; nothing on the face of this document or any other document cited by MI

teaches or suggests an infringing use of the product, and MI's Second Amended Complaint

provides no explanation as to how the quoted text from these Intel documents supposedly shows a specific intent to infringe.  (*Id.* at ¶¶ 49-53.)

### 4.    MI's '206 Patent Inducement Allegations

The '206 patent is directed to a cache coherence system in which a "local protocol engine" processes memory transactions that target local memory and a separate "remote protocol engine" processes memory transactions that target remote memory.  (*See, e.g.*, Dkt. 105-4-D ("'206 patent") at 18:5-19.)  As with the other asserted patents, some of the '206 patent claims also require a "point-to-point architecture."  (*Id.* at 18:5-8.)

MI's amended inducement claim regarding the '206 patent states that Intel provides "manuals, data sheets, presentations, instructions, and other materials" that allegedly "describe, promote, and encourage use of" what are referred to as C-Boxes and hashing functionality that MI contends infringes the '206 patent.  (2nd Am. Complaint ¶ 62.)  MI then quotes from several documents purporting to describe this functionality.  (*Id.* at ¶¶ 63-68.)  MI relies, for example, on the following portion of an Intel product guide that discusses the implementation of Intel's C-Boxes and an Intel-proprietary hashing algorithm:

> The Intel Xeon Processor 7500 Series contains eight instances of the C-Box, each assigned to manage a distinct 3MB, 24-way set associative slice of the processor's total LLC capacity…. Every physical memory address in the system is uniquely associated with a single C-Box instance via a proprietary hashing algorithm….

(*See, e.g.*, 2nd Am. Complaint at ¶ 63 (quoting Ex.105-17-Q at 2-9).)  This excerpt from the product guide, however, like the other documents cited by MI, again merely describes certain functionality of the accused products; nothing on the face of this document or any other document cited by MI teaches or suggests an infringing use of the product, and MI's Second Amended Complaint provides no explanation as to how the quoted text from these Intel documents supposedly shows a specific intent to infringe.  (*See id.* at ¶¶ 63-68.)

###### 5.    MI's '254 Patent Inducement Allegations

Finally, like the '206 patent, the '254 patent is directed to a cache coherence system in which a "local protocol engine" processes memory transactions that target local memory and a separate "remote protocol engine" processes memory transactions that target remote memory. (*See, e.g.*, Dkt. 105-5-E ("'254 patent") at 12:42-47 ("Remote memory protocol engines … are responsible for processing transactions which target remote memory"…. Local memory protocol engines … are responsible for processing transactions which target local memory"); 18:19-28.) Some of the '254 patent claims also require a "point-to-point architecture." (*Id.* at 18:37-39.)

MI's amended inducement allegations for the '254 patent are nearly identical to its amended inducement allegations for the '206 patent. (*See* 2nd Am. Complaint ¶ 77 (asserting that Intel provides "manuals, data sheets, presentations, instructions, and other materials that describe, promote, and encourage use of two or more '254 Patent Accused Processors in combination, with each processor containing multiple instances of the C-Box (also referred to as a 'Cache Box') to process memory transactions via a proprietary hashing algorithm as claimed in the '254 Patent.").) MI relies on the same Intel documents for its inducement allegations for the '254 patent that it relies on for the '206 patent. (*Id.* at ¶¶ 78-82.) As discussed above, the cited Intel documents merely describe certain functionality of the accused products. Nothing on the face of these or any other documents cited by MI teaches or suggests an infringing use of the products, and MI's Second Amended Complaint provides no explanation as to how the quoted text from these Intel documents supposedly shows a specific intent to infringe.

### III.    ARGUMENT

It is well settled that to adequately plead a claim, a plaintiff must allege **factual support** for each element of the claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Order at 2-3 (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)).

The Supreme Court has stated unequivocally that merely providing "conclusory statements" without any factual support is insufficient.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 557 (a "naked assertion" of wrongdoing without "factual enhancement" does not state a claim); *see also Mujica v. AirScan Inc.*, 771 F.3d 580, 592 (9th Cir. 2014) (holding that "mere conjecture" that the alleged conduct "may have occurred" does not meet the plaintiff's burden to plead sufficient facts); *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (to survive a motion to dismiss "requires pleading facts, as opposed to conclusory allegations" (quoting *Twombly*, 550 U.S. at 555)).  The purpose of this pleading requirement is two-fold:  (1) to show that the plaintiff has some basis for its allegations; and (2) to put the defendant on "fair notice" of the claims at issue.  *See Iqbal*, 556 U.S. at 698; *Twombly*, 550 U.S. at 555 (explaining a complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests").

Applying this standard, courts have repeatedly dismissed induced infringement claims where the allegations in the complaint—like MI's Second Amended Complaint here—are made without factual support.  *See, e.g.*, *Superior Indus., LLC v. Thor Global Enters. Ltd.*, 700 F.3d 1287, 1295-96 (Fed. Cir. 2012) (affirming dismissal of inducement claims where plaintiff did

"not allege any facts to support a reasonable inference that [defendant] specifically intended to induce infringement"); *Johnstech Int'l Corp. v. JF Tech. Berhad*, No. 14-cv-2864, 2015 WL 2062223, at *2 (N.D. Cal. May 1, 2015) (dismissing inducement because "the complaint fails to allege any facts regarding the specific intent required for inducement"); *Bascom Res. LLC v. Facebook, Inc.*, 2013 WL 968210, at *5 (N.D. Cal. March 12, 2013) (dismissing inducement for lack of facts supporting specific intent because the complaint did not provide "any specific allegations about how defendants have advertised an infringing use or instructed customers or third parties regarding how to engage *in an infringing use*"); *Pragmatus Telecom, LLC v. Ford Motor Co.*, No. 12-cv-92, 2012 WL 2700495, at *1 (D. Del. July 5, 2012) (complaint citing defendant's website where defendant allegedly provided the accused service not sufficient to plead specific intent because complaint contained no factual allegations suggesting that defendant *specifically intended* the service to infringe); *Straight Path IP Group, Inc. v. Vonage Holdings Corp.*, No. 14-cv-502, 2014 WL 3345618, at *2-3 (D.N.J. July 7, 2014) (same).

## A.    MI's Inducement Claims Should Be Dismissed Because MI Cannot Plead Facts To Meet The Specific Intent Requirement.

To state a claim for induced infringement, MI must plead specific facts showing that: (i) Intel had knowledge of the asserted patents; (ii) Intel had knowledge that the induced acts would infringe; and (iii) Intel had the "*intent* to 'bring about the desired result,' which is infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926, 1928 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065 (2011)); Order at 3-4.

As the Supreme Court has explained, inducement requires more than just intent to cause the acts that produce direct infringement. *See id.* Instead, inducement "involve[s] the taking of affirmative steps to bring about the desired result" and thus "requires knowledge that the induced acts constitute patent infringement." *Global-Tech*, 131 S. Ct. at 2065, 2068; *see also Microsoft*

*Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("To prove inducement of infringement … the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[T]he inducer must have an ***affirmative intent*** to cause direct infringement…. Accordingly, inducement requires evidence of ***culpable conduct***, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("[M]ere knowledge of possible infringement will not suffice.").

MI failed to cure the deficiencies with its induced infringement allegations by again failing to allege ***any*** facts showing that Intel had the required specific intent to induce infringement of the asserted patents.

       1.      **The Intel Documents on Which MI Relies—Which Merely Describe the Operation of the Accused Products—Do Not Suggest a Specific Intent to Infringe.**

MI attempts to create the appearance of factual support for its allegations by quoting lengthy and technical excerpts from Intel documents relating to the accused products.  (*See supra* Section II.B; *see also* Ex.[2] 1 [Redline].)  But these documents merely purport to describe the operation of certain features of the Intel products—they do not show that Intel had a specific intent to induce infringement of MI's patents.  Even accepting MI's allegations as true, MI's amended claims would only show that some of the Intel products work a certain way; the documents say nothing that would suggest that Intel had a specific intent to induce infringement of MI's patents.  (*Id.*)

---

[2]  The exhibits to this Motion are attached to the supporting Declaration of Arthur W. Coviello.

It is well settled that simply advertising an accused feature or describing its operation to customers—something that all product companies must do in the ordinary course of business—is not sufficient to show specific intent. *See Vita-Mix*, 581 F.3d at 1329 n.2 (evidence that "a user following the instructions may end up using the device in an infringing way" is insufficient to state a claim for inducement); *Avocet Sports Tech., Inc. v. Garmin Int'l*, Inc., No. 11-cv-4049, 2012 WL 2343163, at *4 (N.D. Cal June 5, 2012) (dismissing inducement for lack of facts showing specific intent because "the allegations, taken as true, merely indicate that [defendant] provided other parties with 'instruction' and 'training' in the use of [defendant's] own products"); *Straight Path*, 2014 WL 3345618, at *2 (holding that extensive citations to defendant's product documents was nevertheless insufficient to establish that "Defendants *specifically intended* for the induced acts to infringe") (emphasis in original); *Unisone Strategic IP, Inc. v. Life Tech. Corp.*, No. 13-cv-1278, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013) (allegation that "Defendant provides instruction, technical support, and training" for use of its product was insufficient to plead affirmative intent to induce infringement).

The decision in *Straight Path* is closely analogous to the circumstances presented here. There, after dismissing the plaintiff's inducement claims with leave to amend, the court found that the plaintiff's amended inducement claims again failed to show specific intent—despite the plaintiff having added "over 350 additional paragraphs" to its amended complaint, including multiple specific references to the defendant's website purporting to describe the operation of the accused products. *See Straight Path,* 2014 WL 3345618, at *2; *see also, e.g.*, Ex. 2 [Straight Path Amended Complaint] at 5-8. The court explained that the amended complaint still failed to show that the defendants "*specifically intended* for the induced acts to infringe the Asserted Patents." *Straight Path*, 2014 WL 3345618, at *2 (emphasis in original). Accordingly, because

the plaintiff had tried and failed to cure the deficiencies in its complaint, the court dismissed the

inducement claims with prejudice.  *Id.* at 3.[3]

Indeed, if merely describing the operation of accused features were sufficient to show

specific intent, then there would be little distinction between a claim for direct infringement—for

which a plaintiff must show the operation of the accused features—and a claim that a defendant

***intended*** to cause direct infringement.  But that is not the law—the Supreme Court, the Federal

Circuit, and district courts have repeatedly made clear that the specific intent element requires

something more than a showing of direct infringement.  *See, e.g.*, *Metro-Goldwyn-Mayer Studios*

*Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) ("ordinary acts incident to product distribution,

such as offering customers technical support or product updates" would not support liability for

inducement in and of themselves); *id.* (explaining that the specific intent requirement for

inducement "premises liability on purposeful, culpable expression and conduct").

### 2.    MI Fails to Offer Any Explanation as to How the Cited Intel Documents Allegedly Show a Specific Intent to Infringe.

MI fails to offer any explanation in its Second Amended Complaint as to how the cited

Intel documents—which do not, on their face, say anything suggesting an intent to infringe—

---

[3] The cases cited by MI in its opposition to Intel's first motion to dismiss, including *Bill of Lading* and *Tranxition*, are not to the contrary.  In those cases, the plaintiffs pleaded facts showing that the defendants' advertisements and product literature encouraged customers to use the products in ways that, on their face, closely and specifically tracked the claimed features and benefits of the asserted patents.  *See In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341-46 (Fed. Cir. 2012) (finding complaints sufficient where the plaintiff pointed to statements and advertisements for the accused products in which the defendants specifically touted the same benefits and features claimed in the asserted patents; for example, a patent at issue was directed to "a method in which documents are scanned on board vehicles" and defendant's documents, on their face, touted the ability of defendant's products to "perform in-cab scanning of…documents"); *Tranxition, Inc. v. Novell, Inc.*, No. 12-cv-1404, 2013 WL 2318846, at *5 (D. Or. May 27, 2013) (finding that specific intent was adequately pleaded in part because the plaintiff's complaint identified a specific URL web address for the defendant's website that provided instructions on how to use the accused software product to achieve the specific benefits claimed in the patent).

PAGE 13 – INTEL CORPORATION'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; MEMORANDUM IN SUPPORT THEREOF

allegedly show the requisite intent.  As this Court previously explained in dismissing MI's prior inducement claims, to show a specific intent to infringe, MI must provide ***specific factual allegations*** showing ***how*** Intel's documents "teach an infringing use."  *See* Order at 5 (explaining that MI's specific intent allegations were deficient because the complaint failed to allege how "Intel's instructions and support [for its products] 'teach an infringing use' of its products").

MI's amended allegations do nothing to correct MI's previous pleading deficiencies.  Absent any explanation in the Second Amended Complaint as to how the quoted Intel documents could be used to show an alleged intent to infringe, MI's amended inducement allegations are essentially just an assertion that Intel advertises and describes the operation of its products.  That is insufficient to show specific intent.  *See Bascom*, 2013 WL 968210, at *5 (dismissing inducement claim for lack of alleged facts supporting specific intent because the complaint did not provide "any specific allegations about how defendants have advertised an infringing use or instructed customers or third parties regarding how to engage in an infringing use"); *Straight Path*, 2014 WL 3345618, at *2 (allegations that the defendants induced customers by instructing them how to use the accused products was insufficient to establish that "Defendants *specifically intended* for the induced acts to infringe") (emphasis in original).

> ### 3.   Intel's Continued Supply of Product Information to Its Customers Following the Filing of MI's Original Complaint Is Insufficient to Show Specific Intent.

Finally, MI's allegation that Intel continued to provide its customers with documents describing its products after receiving MI's complaint is likewise insufficient to show the requisite specific intent.  (*See* 2nd Am. Complaint ¶¶ 22, 34, 48, 62, 77.)  There is nothing in the cited Intel documents from which one could reasonably infer that Intel specifically intended its customers to infringe.  *Metro-Goldwyn-Mayer*, 545 U.S. at 937 (ordinary acts of marketing and

selling products do not show specific intent to induce infringement).  As a result, the fact that

Intel continued to make those documents available after learning of MI's infringement

allegations, without more, does not establish intent.  As this Court has already explained,

knowledge and intent are separate elements, and *intent* may not be inferred merely based on

***knowledge*** of the plaintiff's allegations.  *See* Order at 4 ("The latter [specific intent requirement]

may not merely be inferred from the former [knowledge requirement].");  *see also id.* ("The

defendant may be aware of the patent, but 'if [he] reads the patent's claims differently from the

plaintiff, and that reading is reasonable,' then he lacks the scienter required for inducement

liability." (quoting *Commil*, 135 S. Ct. at 1928)).

Consistent with the Court's prior Order, courts have routinely dismissed inducement

claims under similar circumstances  *See, e.g.*, *Unisone*, 2013 WL 5729487, at *3 (rejecting

argument that specific intent can be inferred based on service of complaint and an allegation that

"Defendant provides instruction, technical support, and training" for its products); *Pragmatus*

*AV, LLC v. Yahoo! Inc.*, No. 11-cv-902 , 2013 WL 2295344, at *1 (D. Del. May 24, 2013)

(dismissing induced infringement claims and rejecting plaintiff's "contention that intent can be

inferred because [defendant] has 'continued the acts which induced infringement after gaining

knowledge of infringement'").

## IV.    CONCLUSION

MI's Second Amended Complaint confirms that, even after more than a year of litigation,

extensive discovery, and multiple opportunities to amend its pleadings, MI still has no factual

basis for its assertion that Intel specifically intended to infringe MI's patents.  Intel respectfully

requests that the Court grant partial judgment on the pleadings and dismiss MI's claims of

induced infringement with prejudice.

DATED this 14th day of August 2015.

By:

/s/ Renée E. Rothauge

Grant K. Rowan (admitted *pro hac vice*)           Renée E. Rothauge (OSB #903712)
WILMERHALE LLP                                      MARKOWITZ HERBOLD PC
1875 Pennsylvania Avenue NW                         1211 SW Fifth Avenue, Suite 3000
Washington, DC 20006                                Portland, OR 97204-3730
(202) 663-6011                                      (503) 295-3085
grant.rowan@wilmerhale.com

Arthur W. Coviello (admitted *pro hac vice*)        Michael J. Summersgill (admitted *pro hac vice*)
WILMERHALE LLP                                      Jordan L. Hirsch  (admitted *pro hac vice*)
950 Page Mill Road                                  Sean K. Thompson (admitted *pro hac vice*)
Palo Alto, CA 94304                                 WILMERHALE LLP
(650) 858-6000                                      60 State Street
arthur.coviello@wilmerhale.com                      Boston, MA 02109
                                                    (617) 526-6000
                                                    michael.summersgill@wilmerhale.com
                                                    jordan.hirsch@wilmerhale.com
                                                    sean.thompson@wilmerhale.com

                                                    *Attorneys for Intel Corporation*

**CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(B)(2)**

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4,705 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 14th day of August 2015.


/s/ Renée E. Rothauge
Renée E. Rothauge (OSB #903712)
Attorney for Intel Corporation