**Renée E. Rothauge**, OSB #903712
ReneeRothauge@markowitzherbold.com
MARKOWITZ HERBOLD PC
Suite 3000, Pacwest Center
1211 SW Fifth Avenue
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax:  (503) 323-9105

**Michael J. Summersgill** (*pro hac vice*)
**Jordan L. Hirsch** (*pro hac vice*)
**Sean K. Thompson** (*pro hac vice*)
WILMERHALE LLP
60 State Street
Boston, MA  02109
(617) 526-6000

**Grant K. Rowan** (*pro hac vice*)
WILMERHALE LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

**Arthur W. Coviello** (*pro hac vice*)
WILMERHALE LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

*Attorneys for Defendant Intel Corporation*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| **MEMORY INTEGRITY, LLC**, | Case No. 3:15-cv-00262-SI |
| Plaintiff, | **DEFENDANT INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |
| v. | |
| **INTEL CORPORATION**, | |
| Defendant. | **Pursuant to Fed. R. Civ. P. 12(c)** |

## TABLE OF CONTENTS

Pages

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT .......................................................................................................................2

        A. MI Is Wrong That The Intel Documents Cited In The SAC Create A "Reasonable Inference" Of Specific Intent. ............................................................2

        B. MI Is Wrong That Continuing To Provide Descriptions Of The Accused Products After The Complaint Was Filed Shows Specific Intent. ...........................9

III. CONCLUSION ..................................................................................................................10

CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2) ..........................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 9, 10

*Avocet Sports Technology, Inc. v. Garmin International, Inc.*,
  No. 11-cv-4049, 2012 WL 2343163 (N.D. Cal. June 5, 2012) ......................................... 3

*Bascom Research. LLC v. Facebook, Inc.*,
  No. 12-cv-6293, 2013 WL 968210 (N.D. Cal. Mar. 12, 2013) ......................................... 9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 9

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (May 26, 2015) .................................................................................. 8-9

*Conair Corp. v. Jarden Corp.*,
  No. 13-cv-6702, 2014 WL 3955172 (S.D.N.Y. Aug. 12, 2014) ....................................... 6

*Enthone, Inc. v. BASF Corp.*,
  No. 15-cv-233, 2015 WL 5090015 (N.D.N.Y. Aug. 27, 2015) ........................................ 6

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ......................................................................................... 9

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ............................................................................... passim

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ................................................................................................ 1-2, 7

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014) ......................................................................................... 1

*Mobile Telcoms, Techs, LLC v. Amazon.com, Inc.*,
  No. 13-cv-883, 2014 U.S. Dist. LEXIS 138786 (E.D. Tex. Aug. 26, 2014) .................... 6

*Nomadix, Inc. v. Hospitality Core Servs., LLC*,
  No. 14-cv-8256, 2015 WL 1525537 (C.D. Cal. Apr. 3, 2015) ........................................ 6

*Pragmatus AV, LLC v. Yahoo! Inc.*,
  No. 11-cv-902, 2013 WL 2295344 (D. Del. May 24, 2013) .......................................... 10

Case 3:15-cv-00262-SI    Document 126    Filed 09/17/15    Page 4 of 16

*Pragmatus Telecom, LLC v. Ford Motor Co.*,
 No. 12-cv-92, 2012 WL 2700495 (D. Del. July 5, 2012) ......................................................... 8

*Straight Path IP Group, Inc. v. Vonage Holdings Corp.*,
 No. 14-cv-502, 2014 WL 3345618 (D.N.J. July 7, 2014) ........................................................ 8

*Tranxition, Inc. v. Novell, Inc.*,
 No. 12-cv-1404, 2013 WL 2318846 (D. Or. May 27, 2013) .................................................... 6

*Unilin Beheer B.V. v. Tropical Flooring*,
 No. 14-cv-2209, 2014 WL 2795360 (C.D. Cal. June 13, 2004) ............................................... 6

*Unisone Strategic IP, Inc. v. Life Technologies Corp.*,
 No. 13-cv-1278, 2013 WL 5729487 (S.D. Cal. Oct. 22, 2013) .............................................. 10

I.    INTRODUCTION

The ultimate question for the Court is whether the allegations in MI's Second Amended Complaint ("SAC")—which show only that MI has accused certain features of infringement and that Intel has described some of those features to customers—could plausibly show that Intel specifically intended to induce its customers to infringe the asserted patents. The answer is plainly no. Specific intent requires more: "the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute a patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014). MI's arguments to the contrary fail.

*First*, MI's argument that it has adequately pled specific intent by quoting from "over a dozen specific documents" purporting to describe the features of Intel's products that MI has accused of infringement is incorrect. (Dkt. 113 [Opp.] at 1.) MI argues that its pleadings of specific intent are adequate under cases such as *In re Bill of Lading Transmission & Processing System Patent Litigation*, 681 F.3d 1323 (Fed. Cir. 2012). (Opp. 2.) But, in *Bill of Lading*, the complaint cited advertisements for the accused products that, ***on their face***, touted the same features and benefits recited in the asserted patent. *See Bill of Lading*, 681 F.3d at 1341-46. In contrast, the Intel documents that MI quotes have no apparent connection to the asserted claims. Indeed, the cited Intel documents establish nothing more than the unremarkable fact that Intel sought to provide its customers with information regarding how its products work. If simply providing a technical manual for a product accused of infringement were enough to show intent to induce infringement—something nearly every product company must do—***nearly every alleged direct infringer would also automatically be liable for inducement***. That is not the law. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) ("The

inducement rule, instead, premises liability on *purposeful, culpable expression and conduct*…").[1]

*Second*, MI argues that Intel's continued supply of product documents to its customers after MI filed its original complaint is sufficient to show the requisite specific intent. (Opp. 20-21.) But where, as here, the product documents themselves do not plausibly show the requisite specific intent, the fact that Intel continued to supply such documents after this case was filed similarly cannot establish specific intent.

MI's failure to plead the necessary facts to sustain its inducement claims, after nearly two years of litigation and multiple attempts, confirms that MI has no such facts. Accordingly, MI's inducement claims should be dismissed with prejudice.

## II. ARGUMENT

### A. MI Is Wrong That The Intel Documents Cited In The SAC Create A "Reasonable Inference" Of Specific Intent.

MI attempts to obscure its lack of factual allegations showing specific intent by providing long, complex technical quotes from Intel product documents. (*See, e.g.*, Opp. 1 ("[T]he SAC cites over a dozen specific documents…. [T]he SAC pleads detailed factual allegations identifying specific documents…."); *see also id*. at 16, 18, 21.) But a careful review of the cited portions of the Intel documents shows that they merely describe the operation and features of Intel's products and thus establish nothing with respect to an alleged specific intent to infringe. (*See, e.g.*, Dkt. 105 [SAC] ¶¶ 63, 78 (citing to a portion of a product manual that explains that the "Intel Xeon Processor 7500 Series contains eight instances of the C-Box"); *id*. at ¶ 50 (citing Intel product guide that merely explains how the accused Intel processors perform "read-for-ownership" operations); *see generally* Dkt. 108 [Motion] at Section II.B.).

---

[1] Emphasis is added unless otherwise noted.

PAGE 2 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

MI nevertheless argues that, because the cited product documents describe features that MI has accused of direct infringement, the documents establish that Intel specifically intended to induce infringement. (Opp. 11.) With respect to the '121 patent, for instance, MI argues that it has accused Intel's use of "core valid bits" of meeting certain limitations of the asserted '121 patent claims, that Intel has described the use of such "core valid bits" in documents provided to customers, and therefore that MI has met its burden of pleading specific intent. (*Id.* at 4-6, 14.) But critically, nothing on the face of the documents suggests that Intel was ***intentionally*** promoting an infringing use. Nothing on the face of Intel's documents describing its use of "core valid bits," for instance, establishes any apparent connection to MI's '121 patent. (*See* SAC ¶¶ 18-29.) Indeed, the use of "core valid bits" is referenced nowhere in the '121 patent. (*See id.*; *see also* '121 patent, 30:65-32:62 (asserted claims).) The documents cited in the SAC thus establish only that Intel described features of its products to customers.

It is well settled that simply providing descriptions of accused features to customers is not sufficient to create an inference of intent—the plaintiff must instead show that those descriptions were ***specifically intended*** to induce infringement. *See DataTern*, 755 F.3d at 904 ("[T]he patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute a patent infringement."); Dkt. 98 [Order] at 5 (explaining that MI must show that Intel promoted "***an infringing use***," not merely that Intel provides documents to customers that describe the accused features); *Avocet Sports Tech., Inc. v. Garmin Int'l., Inc.*, No. 11-cv-4049, 2012 WL 2343163, at *4 (N.D. Cal. June 5, 2012) (dismissing inducement claim for failure to adequately plead specific intent because "the allegations, taken as true, merely indicate that [defendant] provided other parties with

PAGE 3 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

'instruction' and 'training' in the use of [defendant's] own products"). Even if accepted as true, therefore, MI's allegations fail to show the requisite specific intent.

MI cannot overcome this failure by pointing to the Federal Circuit's *Bill of Lading* case or any of the other cases cited in its opposition. (Opp. 11-14). In *Bill of Lading*, the court found the plaintiff's inducement allegations sufficient because the plaintiff pointed to evidence (statements about, and advertisements for, the accused products) in which the defendants highlighted the ***specific benefits and features claimed in the asserted patent*** after having received a cease-and-desist letter from the plaintiff. *See Bill of Lading*, 681 F.3d at 1341-46. The patent asserted in *Bill of Lading* disclosed a system for transferring shipping documentation for a package from a transporting vehicle to a remote processing center. *Id.* at 1329. Specifically, the patent was directed to "a method in which ***documents are scanned on board vehicles***." *Id.* at 1341. As support for its inducement claim, the plaintiff cited documents which, ***on their face***, touted the ability of defendant's products to "perform ***in-cab scanning of … documents***." *Id.* at 1341-46. The court concluded that, based on the close parallel between these statements and ***the features recited in the claims***, the plaintiff had pled a plausible claim of specific intent:

> As previously discussed, ***the '078 patent discloses a method in which documents are scanned on board vehicles*** for use by dispatchers in preparing manifests dictating which shipments should be consolidated and shipped on which trucks heading to which location…. In support of [plaintiff's allegation of induced infringement], ***R+L quotes DriverTech's statement that its mobile computer products allow customers "to perform in-cab scanning of critical proof of delivery (POD) and other driver documents***" and to transmit these documents wirelessly. R+L points out that ***DriverTech touts that it is partnered with McLeod Software, the "leading provider of dispatch … software to the transportation industry," and that its products will help "improve[] asset utilization and fleet maintenance."*** And, the complaint alleges that DriverTech made these claims after it received a cease and desist letter making it aware of the '078 patent.

PAGE 4 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

> . . .
>
> The specification of the '078 patent makes clear that the method it claims improves asset utilization and efficiency by enabling route planning to occur while shipments are still en route. To achieve these benefits, bills-of-lading are scanned in the truck cab and transmitted while the truck is en route…. Common sense indicates that advertising that your product can be used in conjunction with dispatch software to improve asset utilization and provide operational efficiency to the less-than-a-load shipping/trucking industry gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method. This is sufficient to push the complaint past the line "between possibility and plausibility."

*Id.* at 1341-42 (citations omitted).[2]

Here, by contrast, there is no facial connection between the asserted patent claims and Intel's product documents. The asserted '121 patent, for instance, is directed to a probe filtering unit that receives probes and "filters" the probes by forwarding the probes to only a subset of a cluster of processors connected in a point-to-point architecture. (Dkt. 105-1-A ("'121 patent") at 2:46-58, 26:42-57, 27:5-8, 29:32-47.) Nothing in Intel's descriptions of "core valid bits" quoted in the SAC suggests the use of a probe filtering unit to receive and filter probes, let alone the use of such a device in the point-to-point architecture required by the '121 patent claims. (*Compare* SAC ¶ 23 (quoting from an Intel Xeon Processor E7 v2 Datasheet: "For any given cache line, the LLC implements core valid bits to track which local core(s) have cached the line in their MLC. Core valid bits are also used by LLC to determine which local core(s) are needed to be snooped during responding to snoop request.") *with* '121 patent, 30:65-32:62 (asserted claims).) MI

---

[2] MI incorrectly argues that *Bill of Lad*ing stands for the proposition that any "general statements" that the defendant makes about the benefits of using the accused product can be used to show a specific intent to infringe. (Opp. 15.) Contrary to MI's argument, the Federal Circuit made clear that the statements cited in the complaints in *Bill of Lading* were sufficient because they touted the same benefits and features recited in the asserted patent—*i.e.*, scanning and transmitting documents from a vehicle. *See Bill of Lading*, 681 F.3d at 1344.

PAGE 5 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

asserts that Intel's use of core valid bits infringes, but nothing in the documents themselves show that Intel was intentionally promoting an infringing use.[3]

MI's allegations for the other patents are similarly deficient. Although MI alleges that certain features infringe, there is nothing on the face of the documents even remotely suggesting that Intel was promoting an infringing use of the claimed inventions:

- The '636 patent is directed to "speculative probing" of a remote cluster of processors in a specific point-to-point, multiple-processor architecture. (*See, e.g.*, Dkt. 105-2-B ("'636 patent") at 6:21-24, 19:57-20:4.) Yet, in support of its allegation that Intel specifically intended to induce infringement of the '636 patent, MI cites to Intel papers describing Intel's "source snooping" protocol. (*See, e.g.*, SAC ¶ 35.) These "source snooping" excerpts neither mention speculative probing nor mention using such a method in a system incorporating a point-to-point architecture. Moreover, there is no reference to source-snooping anywhere in the '636 patent.

---

[3] MI also cites to multiple other non-controlling cases that fail to support its induced infringement theory for the same reasons as *Bill of Lading*. (Opp. 12-14.) In *Enthone Inc. v. BASF Corp.*, No. 15-cv-233, 2015 WL 5090015 (N.D.N.Y. Aug. 27, 2015), for instance, the district court found specific intent adequately pled in part because the plaintiff alleged that the defendant provided "instructions with their products that cause the prepared compositions to have 'the ***specific attributes described and claimed in [the patents-in-suit]***.'" *Enthone*, 2015 WL 5090015, at *5; *see also Tranxition, Inc. v. Novell, Inc.*, No. 12-cv-1404, 2013 WL 2318846, at *1 (D. Or. May 27, 2013) (finding inducement pleading sufficient where the patents were directed to "automatically ***transitioning*** … configuration settings among computer systems" and the accused products were actually named "***Migration*** (or Migration Assistant) software"); *Conair Corp. v. Jarden Corp.*, No. 13-cv-6702, 2014 WL 3955172, at *3 (S.D.N.Y. Aug. 12, 2014) (finding inducement allegations sufficient where the asserted patent was directed to a removable milk container for a coffee maker and the plaintiff alleged facts showing that the defendant induced customers to use removable milk containers included with the coffee machines that defendant sold); *Nomadix, Inc. v. Hospitality Core Servs. LLC*, No. 14-cv-8256, 2015 WL 1525537, at *3 (C.D. Cal. Apr. 3, 2015) (finding intent allegation sufficient where plaintiff alleged that defendant took "active steps" to encourage infringement by providing instructions to its customers on ***how to perform the patented method*** and training individuals who could assist customers in performing the patented method); *Unilin Beheer B.V. v. Tropical Flooring*, No. 14-cv-2209, 2014 WL 2795360, at *5 (C.D. Cal. June 13, 2004) (finding intent allegation sufficient in part because the plaintiff alleged that defendant provided "written instructions instructing customers on ***how to assemble and use the products***" accused of infringing, *inter alia*, a ***patent claim regarding a particular method of assembling and using*** floor coverings); *Mobile Telecomms. Techs., LLC v. Amazon.com, Inc.*, No. 13-cv-883, 2014 U.S. Dist. LEXIS 138786, at *3-4 (E.D. Tex. Aug. 26, 2014) (finding intent allegation sufficient where plaintiff alleged that defendant provided instructions on "***how to use***" the allegedly infringing functionality in an infringing manner).

PAGE 6 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

- The '409 patent is directed to "speculative probing" of a local cluster of processors in a specific point-to-point, multiple-processor architecture. (*See, e.g.*, Dkt. 105-3-C ("'409 patent") at 5:43-46, 17:40-56.)  Yet, in support of its claim that Intel specifically intended to induce infringement of the '409 patent, MI cites to documents that describe Intel's "read-for-ownership (RFO)" operations. (*See, e.g.*, SAC ¶ 50.)  These documents referencing Read-for-Ownership transactions neither mention speculative probing nor mention using such a method in a system incorporating a point-to-point architecture.  Moreover, there is no reference to "read-for-ownership (RFO)" operations anywhere in the '409 patent.

- The '206 and '254 patents require the use of remote and local protocol engines to process remote and local memory transactions, respectively. (*See, e.g.*, Dkt. 105-4-D ("'206 patent") at 18:5-19; Dkt. 105-5-E ("'254 patent") at 18:14-35.)  Yet, in support of its claim that Intel specifically intended to induce infringement of the '206 and '254 patents, MI quotes documents describing Intel's use of a "cache box" (C-Box) component in its processors. (*See, e.g.*, SAC ¶¶ 62-63, 77-78.)  These documents say nothing about the use of the remote and local protocol engines required by the claims.  Moreover, there is no reference to the use of a cache box in the '206 and '254 patents.

Ultimately, MI's argument amounts to an assertion that Intel describes features of its microprocessors in product manuals, MI accuses those features of infringement, and therefore, Intel must specifically intend to induce infringement by its customers.  But, if MI were correct that simply describing technical features of a product accused of direct infringement were sufficient to plead a claim for inducement, nearly every product company accused of direct infringement would automatically be liable for inducement as well.  That is plainly not the law.  *See Metro-Goldwyn-Mayer*, 545 U.S. at 937-38 ("The inducement rule, instead, premises liability on ***purposeful, culpable expression and conduct***, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.… [M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability.  ***Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves***").[4]

---

[4] Contrary to MI's arguments (Opp. 16-19), courts have not held that ***any*** advertisement of an accused product suffices to show a defendant's specific intent to induce infringement.  As

PAGE 7 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Indeed, highlighting that MI's arguments improperly seek to conflate the separate requirements of direct and indirect infringement, many of the documents that MI cited in the SAC as support for its specific intent allegations were the same documents that MI already cited in support of its ***direct*** infringement allegations. (*Compare* SAC ¶ 63 ("The Intel Xeon Processor 7500 Series contains eight instances of the C-Box…") *with* Ex. 1 [excerpts of MI infringement contentions for '206 patent] at 6, 39 (same).)[5]  It appears that when the Court found that MI's First Amended Complaint did not "permit the inference that Intel *specifically intended* that its customers use its products in an infringing manner" (Order at 5-6), MI supplemented its complaint to add many of the same documents already cited in support of its ***direct*** infringement allegations. It is well settled, however, that pleading and proving specific intent requires a plaintiff to show more than just direct infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*,

---

*Bill of Lading* demonstrates, advertising can be sufficient in certain circumstances. But where, as here, the advertisements/statements have no apparent connection to the specific benefits and features claimed in the asserted patents, courts routinely dismiss plaintiffs' inducement claims. *See, e.g.*, *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14-cv-502, 2014 WL 3345618, at *2 (D.N.J. July 7, 2014) (allegations that the defendants induced customers by instructing them regarding the accused products was insufficient to establish that "Defendants *specifically intended* for the induced acts to infringe"); *Pragmatus Telecom, LLC v. Ford Motor Co.*, No. 12-cv-92, 2012 WL 2700495, at *1 (D. Del. July 5, 2012) (complaint citing defendant's website through which defendant allegedly provided the accused service not sufficient to plead specific intent because complaint contained no factual allegations suggesting that defendant *specifically intended* the service to infringe).

[5]  Five of the documents cited by MI as purportedly showing a specific intent to infringe—namely, Exhibits O, L, Q, K, and S to the SAC—were cited in MI's infringement contentions for direct infringement. (*See, e.g.*, Ex. 3 (MI infringement contentions for '409 patent, citing "Performance Analysis Guide for Intel® Core™ i7 Processor and Intel® Xeon™ 5500 processors" ("Levinthal"), which is Exhibit O to SAC); Ex. 4 (MI infringement contentions for '121 patent, citing "Intel Xeon Processor 7500 Series Datasheet" ("Xeon 7500 Datasheet"), which is Exhibit L to SAC; Ex. 5 (MI infringement contentions for '254 patent, citing "Intel® Xeon® Processor E5-2600 Product Family Uncore Performance Monitoring Guide" ("Uncore Guide"), which is Exhibit S to SAC; Ex. 2 (MI infringement contentions for '206 patent, citing "Intel® Xeon® Processor E5-1600/E5-2600/E5-4600 v2 Product Families" ("Xeon Processor Datasheet"), which is a version of Exhibit K to SAC; Ex. 6 (MI infringement contentions for

PAGE 8 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

135 S. Ct. 1920, 1928 (May 26, 2015) (specific intent to induce infringement requires proof that the defendant "knew the acts were infringing"); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) (stating that, to prove inducement, the plaintiff must show more than direct infringement).[6]

### B. MI Is Wrong That Continuing To Provide Descriptions Of The Accused Products After The Complaint Was Filed Shows Specific Intent.

MI incorrectly argues that it has adequately pled specific intent by alleging that "Intel[] *continu[ed* to provide] documents which instruct Intel's customers how to configure and operate the accused processors in an [allegedly] infringing manner, *after* MI served its original complaint for infringement on Intel." (Opp. 2, 20-21.) As discussed above, the cited Intel documents do not suggest, let alone encourage, an infringing use. Thus, merely continuing to provide these same documents after service of MI's complaint cannot establish a specific intent to induce infringement. *See, e.g.*, *Bascom Research LLC v. Facebook, Inc.*, No. 12-cv-6293, 2013 WL 968210, at *5 (N.D. Cal. Mar. 12, 2013) (dismissing inducement claim for lack of facts supporting specific intent even though the complaint provided the defendants with knowledge of the asserted patents and the plaintiff's assertions of infringement, because, among other things,

---

'636 patent, citing "Intel® Xeon® Processor 7500 Series Uncore Programming Guide" ("Uncore Programming Guide"), which is Exhibit Q to SAC).

[6] MI also incorrectly accuses Intel of arguing that circumstantial evidence can never be enough to plead induced infringement. (Opp. 15-16.) That is wrong—Intel does not dispute that circumstantial evidence can be sufficient. But, to be sufficient, the circumstantial evidence must show that a specific intent to induce infringement is "plausible," not just "possible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 681-83 (2009) (explaining that the alleged facts must "***show***" a "plausible" (as opposed to merely possible) entitlement to relief). As discussed above, the Intel documents cited in MI's SAC do not plausibly show an intent to infringe because they show only that Intel advertised the accused products and described their operation to customers—something that all product companies must do in the ordinary course of business. (*See* Motion at Section II.B.) MI's purported "circumstantial evidence" thus fails the pleading standard of *Iqbal* and *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (finding alleged

PAGE 9 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

there were no "specific allegations about how defendants have advertised an infringing use"); *Unisone Strategic IP, Inc. v. Life Techs. Corp.*, No. 13-cv-1278, 2013 WL 5729487, at *3 (S.D. Cal. Oct. 22, 2013) (rejecting argument that specific intent can be inferred based on service of complaint and an allegation that "Defendant provides instruction, technical support, and training" for its products); *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-cv-902 , 2013 WL 2295344, at *1 (D. Del. May 24, 2013) (dismissing induced infringement claims and rejecting plaintiff's "contention that intent can be inferred because [defendant] has 'continued the acts which induced infringement after gaining knowledge of infringement'"); Order at 4 ("The latter [specific intent requirement] may not merely be inferred from the former [knowledge requirement]: The defendant may be aware of the patent, but if [he] reads the patent's claims differently from the plaintiff, and that reading is reasonable, then he lacks the scienter required for inducement liability." (quotation marks omitted)).  Indeed, to hold otherwise, would place defendants in the untenable position of ceasing all technical support for their customers or facing liability for induced infringement.  That is not, and should not be, the law.

## III.  CONCLUSION

MI's reliance on long, complex, technical quotes from Intel product documents appears designed to create the impression that there ***might be*** specific intent.  But MI's burden is to plead facts on which one could conclude that there ***is*** specific intent.  *See Iqbal*, 556 U.S. at 679, 681 (explaining that the alleged facts must "***show***" a "plausible" (as opposed to merely possible) entitlement to relief).  Even accepting all of MI's allegations as true, MI has not met that burden.  Nothing in the Intel documents to which MI cites establishes any apparent connection to the specific features of MI's claimed inventions.  Instead, at most, MI's allegations establish that

---

circumstantial evidence of a conspiracy insufficient to meet the pleading standard because the alleged evidence did not "state a claim to relief that is plausible ***on its face***").

Intel has described features of its products that MI accuses of infringement.  That alone is insufficient to establish specific intent to induce infringement.  Intel therefore respectfully requests that the Court grant partial judgment on the pleadings and dismiss MI's inducement claims with prejudice.

DATED this 17th day of September 2015.

By:

/s/  Renée E. Rothauge

| | |
|---|---|
| Grant K. Rowan (admitted *pro hac vice*)<br>WILMERHALE LLP<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>(202) 663-6011<br>grant.rowan@wilmerhale.com<br><br>Arthur W. Coviello (admitted *pro hac vice*)<br>WILMERHALE LLP<br>950 Page Mill Road<br>Palo Alto, CA 94304<br>(650) 858-6000<br>Arthur.coviello@wilmerhale.com | Renée E. Rothauge (OSB #903712)<br>MARKOWITZ HERBOLD PC<br>1211 SW Fifth Avenue, Suite 3000<br>Portland, OR  97204-3730<br>(503) 295-3085<br><br>Michael J. Summersgill (admitted *pro hac vice*)<br>Jordan L. Hirsch  (admitted *pro hac vice*)<br>Sean K. Thompson (admitted *pro hac vice*)<br>WILMERHALE LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-6000<br>michael.summersgill@wilmerhale.com<br>jordan.hirsch@wilmerhale.com<br>sean.thompson@wilmerhale.com<br><br>*Attorneys for Intel Corporation* |

PAGE 11 – INTEL'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2)

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 3,783 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 17th day of September 2015.

*/s/ Renée E. Rothauge*
Renée E. Rothauge (OSB #903712)
Attorney for Intel Corporation